**3LAU Entertainment, LLC**
9101 Alta Drive Unit 407
Las Vegas, NV 89145

Dated as of November 1, 2017

**Luna Aura LLC**
f/s/o Angela Anne Flores p/k/a "Luna Aura"
4150 N 35th Pl.
Phoenix, AZ 85018

Gentlepersons:

    The following, when signed by or on behalf of Luna Aura LLC ("you", "your" or similar pronoun) f/s/o Angela Anne Flores p/k/a "Luna Aura" ("Side Artist") on the one hand, and 3LAU Entertainment, LLC (herein "Productions", "we", "our" or similar pronoun) on the other hand, shall constitute the agreement (the "Agreement") between you and Productions as of the date set forth above.  In consideration of the mutual promises contained herein and other good and valuable consideration, the parties hereto agree to the following:

    1.    <u>Services</u>.

    (a)    Productions hereby engages you to furnish the songwriting and musical performance services of Side Artist in connection with the recording of the master recording (the "**Master**") of the musical composition (the "**Composition**") listed on the attached <u>Schedule "A"</u> embodying the performances of Side Artist and Justin Blau p/k/a "3LAU" ("**Artist**"), which Master is intended for possible inclusion on Artist's forthcoming recording project and for other uses contemplated pursuant to a recording or distribution agreement (each, a "**Recording Agreement**") between Productions and a record label or music distributor (each, a "**Distributor**"), or as set forth in this Agreement in the event that at any time there is no Recording Agreement with a Distributor. You accept and agree to such engagement and you agree to cause Side Artist to appear in such places as Productions shall reasonably designate and at such times as may be mutually agreed for the purpose of rendering the services described herein.

    2.    <u>Grant of Rights</u>.  Side Artist's performances embodied in the Master and any associated audiovisual works embodying the Master (a "**Video**"), if any, recorded hereunder shall, from the inception of their creation, be considered a "work made for hire" for Productions within the meaning of the Copyright Act of 1976 (Title 17, U.S.C.).  If it is determined that the Master and/or the Video do not so qualify, then such Master and Video, together with all rights therein (including the copyright therein and any renewals and extensions thereof, but excluding the musical composition embodied thereon), shall be deemed transferred to Productions by this Agreement.  The Master and Video shall, from the inception of creation, be entirely the property of Productions (or Productions' designees), in perpetuity, throughout the world, free of any claim whatsoever by you or by any persons deriving any rights or interests therefrom.  Without limiting the foregoing, Productions (or Productions' designees) shall have the sole and exclusive right in perpetuity and throughout the world:

    (a)    To manufacture, advertise, sell, license or otherwise dispose of the Master, Video and phonograph records and/or audio-visual recordings derived therefrom (whether embodying solely the Master or Video or the Master or Video together with other audio or audio-visual recordings) upon such terms, and under such trademarks, as Productions (or its designee) elects, or, in its sole discretion, to refrain therefrom;

    (b)    To perform the Master and the Video publicly and to permit the public performance thereof by any method now or hereafter known; and

    (c)    To use and publish your professional name, approved likeness and approved biographical material solely in connection with the advertising, promotion, publicity, exploitation and sale of the Master and the Video and any reproductions derived therefrom.  Productions shall provide you for your approval any portrait or pictures of you or biographical material about you which Productions proposes to use in connection therewith.

3. <u>Compensation</u>. Conditioned upon your and Side Artist's full performance of the terms and conditions hereof, and in full and complete consideration of your performances of services in connection with the Master, and all rights granted in connection therewith:

(a) We shall pay, or we shall cause Distributor to pay, to you an advance in the amount of Two Thousand Five Hundred U.S. Dollars ($2,500.00 USD) (the "Advance"). The Advance shall be fully recoupable from royalties payable to you under section 3(b) below and shall be paid on the later of (i) full execution hereof, with a completed Form W-9 and invoice, and (ii) the satisfactory delivery of the Master and all necessary and required label waivers from any record company entitled to Side Artist exclusive recording and performing services.

(b) Conditioned upon your and Side Artist's full and faithful performance of all of the terms and provisions hereof, you shall be entitled to the following royalty:

(i) A basic royalty rate (the "Basic Rate") with respect to sales of the Master shall be equal to fifty percent (50%) of the Net Royalty payable to us or Artist pursuant to the Recording Agreement with respect to exploitations of the Master in accordance with the terms and conditions of the Recording Agreement, and otherwise calculated as set forth in this paragraph. "Net Royalty" as used in the preceding sentence shall mean the royalty payable to or credited to Productions or Artist by Distributor with respect to exploitations of the Master less the following: (1) the aggregate royalty rates payable to all producers, mixers, remixers, engineers and any other third party royalty participants for services rendered or otherwise in connection with the Master; (2) all permissible royalty deductions under the Recording Agreement, and (3) any and all bona fide and documented out-of-pocket costs incurred by Distributor, Productions, and/or Artist in connection with the manufacture, recording, promotion, distribution and exploitation of the Master, including, for the avoidance of doubt, mechanical royalties (all of which such costs shall first be deducted "off-the-top" from gross earnings). The applicable royalty provisions of the Recording Agreement are or shall be attached hereto as Exhibit "A" and made a part hereof upon request as and when available. For the avoidance of doubt, all royalties payable to you pursuant to this subparagraph 3(b)(i) shall be computed, determined, calculated and paid in the same manner (e.g., container charges, free goods, suggested retail list price, reserves, etc.) and at the same times as royalties payable to Artist or Productions by Distributor, if any, are computed, determined, calculated and paid pursuant to the Recording Agreement.

(c) The provisions of any applicable collective bargaining contract between us and any labor organization which are required by the terms of such contract to be included in this Agreement shall be deemed incorporated herein. You and Side Artist hereby agree that to the extent the services to be rendered by you and Side Artist hereunder are subject to the provisions of any collective bargaining agreement between us and any guild, union or labor organization having jurisdiction, the fee due to you hereunder shall be deemed to be compensation for such services in the minimum amount specified for such services in the applicable collective bargaining agreement(s) (including any residual or new use payments specified in such agreement(s)), and the excess shall be deemed to be compensation for such services and are not subject to the provisions of any such collective bargaining agreement(s). You and Side Artist acknowledge and agree that, except as specifically provided herein, you shall not be entitled to any further consideration from Productions, Distributor or Artist whatsoever in connection with your services hereunder or otherwise in connection with the exploitation of any Master hereunder.

(d) You hereby request and authorize us to pay all royalties otherwise payable to you under section 3(b) above to StreetLightUSA or another IRS Tax Exempt 501(c)(3) Non Profit (the "Non Profit") organization of your choosing, provided that you have notified us in writing of your choice thereof. Our compliance with foregoing authorization set forth in in this subparagraph 3(d) will constitute an accommodation to you alone; and nothing herein shall vest in the Non Profit rights as a beneficiary of or party to this instrument, the Agreement, or any other agreement between you and us. All payments to the Non Profit under this authorization will constitute payment to you and we will have no liability by reason of any erroneous payment or failure to comply with this authorization. You will indemnify and hold us harmless against any claims asserted against us and any damages, losses or expenses we incur by reason of any such payment or otherwise in connection herewith.

4. Accounting.

(a) We shall, pursuant to a letter of direction in a form acceptable to Distributor, generally in the form attached hereto as Exhibit "B", instruct Distributor, and use reasonable efforts to cause Distributor, to account directly to you at the same time and subject to the same conditions pursuant to which Distributor accounts to us. If Distributor fails to so account to you and you notify us of such failure, then we will account to you within sixty (60) days after our receipt of the corresponding royalty statement from Distributor, and we will send to you a statement of royalties payable to you, if any, after deducting any and all unrecouped advances (if applicable) and chargeable costs under this Agreement and such amount, if any, which we may be required to withhold pursuant to any applicable statute, regulation or law. Each such statement shall include a copy of the relevant portions of the corresponding royalty statement received by us from Distributor. No royalty statement shall be required for any period during which no royalties are earned and/or Distributor is not required to provide a statement to us. You hereby agree that, in rendering royalty statements hereunder, we shall have the unqualified right to rely on statements received from Distributor, and statements to you hereunder shall be deemed accurate and binding on you to the extent they are accurate based on statements received by us from Distributor.

(b) You may, at your own expense, audit our books and records directly relating to this Agreement that report the exploitation of the Masters for which royalties and/or share of fees are payable hereunder. You may make such audit only for the purpose of verifying the accuracy of statements sent to you hereunder and only as provided herein. You shall have the right to audit said books by notice to Productions at least thirty (30) days prior to the date you intend to commence an audit. Said audit shall be conducted by a reputable independent certified public accountant experienced in recording industry audits, conducted in such a manner so as not to disrupt our activities, and completed promptly. You may make such an examination for a particular statement only once and only by the date that is two (2) years from the date such statement was rendered. You shall be deemed to have consented to all accountings by Artist, us or Distributor, and said accountings shall be binding upon you and shall not be subject to any objection or claim under any lawsuit for any reason unless specific objection, in writing, stating the basis thereof, is given to Artist by the date that is two (2) years of such statement or accounting being rendered. If we or Artist conduct an audit of Distributor that results in a net recovery with respect to any Masters, then you shall be entitled to a pro-rata share thereof after deducting from the gross proceeds actually received by us or Artist as a result of such audit all costs and expenses incurred in connection with such audit, including, without limitation, accounting fees, audit fees and legal fees, but will have no right to audit Distributor directly.

. 5. Compositions.

(a) You represent and warrant that you co-authored and control the Composition in the percentages set forth on the attached Schedule "A" and consent to the percentages allocated to all other co-writers and publishers. Your undivided interest in the Composition is sometimes herein referred to your "respective share" of the Composition. With respect to your respective share of the Composition: (i) you shall grant licenses and shall cause your respective licensees, designees and assigns to grant licenses for the mechanical reproduction (including so-called "first use" licenses) of your respective share of the Composition in recordings embodying the performances of Artist of such Composition (including any and all versions and/or remixes thereof) at a rate equal to one hundred percent (100%) of the minimum fixed statutory mechanical rate in effect at the date of delivery of the master recordings embodying the applicable Composition (on a pro-rata basis); or (ii) in the event that we or Artist shall enter into an Recording Agreement, on the same terms and conditions applicable to so-called "Controlled Compositions" under any such Recording Agreement (if any); (ii) you shall grant synchronization licenses, free of charge, authorizing the promotional use of your respective share of the Compositions in music videos featuring Artist's performances of such Composition, for the worldwide promotional exploitation of such music videos in all media; and (iii) you shall grant and shall use reasonable efforts to cause your respective licensees, designees and assigns to grant any other licenses that Productions requests for the use or exploitation of your respective share of the Compositions, for which licenses you shall receive your share of income (in accordance with your respective share of the Compositions) derived from such license(s).

(b) You and Side Artist shall be responsible to obligate any person selected furnished or engaged by you or Side Artist in connection with the Composition to be bound by the provisions in Section 5 of this Agreement, and you shall cause all such persons to execute and deliver an agreement evidencing the same, which is deemed to be a material term of this Agreement.

6. <u>Credit.</u>    Productions is hereby granted the right to and shall accord or instruct Company to accord Side Artist an appropriate writer credit in connection with the Composition substantially as follows: "**Written by Angela Anne Flores**", and an appropriate credit as a featured artist on the packaging, liner notes, and metadata (wherever customary and possible) in connection with records (if any) derived from the Master in all configurations and wherever metadata permits, substantially as follows: "**feat. Luna Aura**".  Productions' or Distributor's non-repetitive, inadvertent failure to comply with the foregoing shall not be deemed a breach hereof, provided that following notice from you regarding such failure, Productions shall use reasonable efforts to correct such failure on a prospective basis.

7. <u>Warranties & Representations</u>.

(a) You warrant and represent that, solely to the extent of your and Side Artist's contributions to the Master (and/or of any person and/or entity furnished and/or selected by you):

(i) You have the full right and power to enter into and fully perform this Agreement and that you are not under any disability, restriction, or prohibition, whether contractual or otherwise, with respect to your right to execute this Agreement and perform its terms and conditions and, in connection therewith, you have obtained all necessary consents and approvals as may be required by law or by any third party entitled to your services, including, without limitation, any record label or distributor entitled to your exclusive services, if any;

(ii) Any musical, dramatic, artistic and literary materials furnished solely by you, Side Artist and/or any other persons furnished and/or selected solely by you and/or Side Artist shall not violate or infringe upon any common law or statutory rights of any person, firm or corporation, including without limitation, contractual rights, copyrights and rights of privacy;

(iii) Except as otherwise expressly provided herein, neither Productions, Artist nor Productions' or Artist's designees shall be required to make any payments whatsoever to you, Side Artist, or any third party in connection with the acquisition or exercise of rights hereunder;

(iv) You agree that for a period of three (3) years following the delivery of the Master to Productions, neither you nor Side Artist will perform the compositions embodied therein, or any portion thereof, for anyone for the purpose of making phonograph records or audiovisual recordings without Productions' prior written consent; and

(v) There is in existence between you and Side Artist a valid and enforceable agreement under the terms of which Side Artist is required to perform for you as a recording artist.  You will waive none of your rights thereunder and shall take all steps necessary or desirable to keep the same in full force and effect so that we shall have the benefit of Side Artist's services as if Side Artist had contracted directly with us.

(b) Productions warrants and represents that, solely to the extent of Artist's contributions to the Master:

(i) Productions has the full right and power to enter into and fully perform this Agreement and that Productions is not under any disability, restriction, or prohibition, whether contractual or otherwise, with respect to Productions' right to execute this Agreement and perform its terms and conditions and, in connection therewith; and

(ii) Any musical, dramatic, artistic and literary materials furnished solely by Productions or Artist and/or any other persons furnished and/or selected solely by Productions or Artist shall not violate or infringe upon any common law or statutory rights of any person, firm or corporation, including without limitation, contractual rights, copyrights and rights of privacy.

8. <u>Miscellaneous</u>.

(a) In rendering services hereunder, you and Side Artist shall have the status of an independent contractor and nothing contained in this Agreement shall contemplate or constitute you or Side Artist as Productions' employee or agent and this agreement shall not be deemed to create a partnership, joint venture or agency relationship between Productions and any of you or Side Artist.  Notwithstanding the foregoing,

Productions shall have the right to withhold from any amounts payable to you hereunder such a portion thereof, if any, as may be required to be withheld under the provisions of any applicable code, statute, regulation, treaty or other law, and you shall promptly execute and deliver to Productions such forms and other documents as may be required in connection therewith.

(b)     This Agreement shall inure to the benefit of and be binding upon each of the parties hereto and their respective successors, permitted assigns and representatives.  Productions may assign this Agreement or any of its rights hereunder (provided that it shall remain secondarily liable hereunder in the event of such assignment); you may not assign this Agreement or any of your respective rights hereunder.

(c)     This Agreement contains the entire understanding of the parties hereto relating to the subject matter hereof.  The validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York. Any claim, dispute or disagreement with respect to this Agreement shall be submitted to the courts of the State of New York or the federal courts within the New York County, New York, which courts shall have exclusive jurisdiction thereof.

(d)     Each party (the "**Indemnifying Party**") agrees to indemnify and hold the other party (the "**Indemnified Party**"), and the Indemnified Party's respective successors, assigns, agents, distributors, licensees, officers, directors and employees harmless against any third party claim, liability, cost and expense (including reasonable outside attorneys' fees and legal costs) in connection with any third-party claim which is inconsistent with any agreement, covenant, representation, or warranty made by the Indemnifying Party herein, provided such claim has been reduced to a final, adverse, nonappealable judgment in a court of competent jurisdiction or settled with the Indemnifying Party's prior written consent, not to be unreasonably withheld or delayed.

(e)     All notices hereunder shall be in writing at the respective addresses hereinabove set forth, or such other address or addresses as may be designated by either party by written notice to the other party.  Any notice desired or required to be given by any party hereto to the other shall be in writing and shall be delivered by hand (to an officer if the addressee is a corporation), or sent by United States certified or registered mail, postage prepaid, return receipt requested, or sent by overnight courier, provided that any royalty statement may be sent by regular mail (if applicable).  Properly addressed notices delivered or sent as provided herein shall be deemed given when delivered by hand, or when postmarked if delivered by certified mail or overnight courier, except notices of a change of address shall not be deemed given  until received.

(f)     This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall constitute one document.  Delivery of an executed counterpart of a signature page to this Agreement by facsimile, email or by "e-signature" shall be effective as delivery of a manually executed counterpart of this Agreement.

If the foregoing conforms to your understanding of the Agreement please so indicate by signing this letter in the space provided below.

Very truly yours,

3LAU Entertainment, LLC.

_____
An authorized signatory

ACCEPTED AND AGREED TO:

LUNA AURA LLC

_____
An authorized signatory

5

**ASSENT AND GUARANTEE**

In order to induce 3LAU Entertainment, LLC ("Company") to enter into the foregoing agreement ("Agreement") with Luna Aura LLC ("Lender"), I the undersigned hereby:

(a) acknowledge that I understand and am familiar with all the terms and conditions of the Agreement;

(b) assent to the execution of the Agreement and agree to be bound by the terms and conditions thereof, including, but not limited to, each and every provision of the Agreement that relates to the undersigned in any way, directly or indirectly, the services to be rendered thereunder by the undersigned and restrictions imposed upon the undersigned in accordance with the provisions of the Agreement, and hereby guarantee to Company the full and faithful performance of all the terms and conditions of the Agreement by the Lender and the undersigned; and

(c) acknowledge and agree that Company and Distributor shall be under no obligation to make any payments to the undersigned or otherwise, for or in connection with this inducement and for or in connection with the services rendered by the undersigned or in connection with the rights granted to Company and Distributor thereunder and the fulfillment of the undersigned's obligations pursuant to the Agreement.

ACCEPTED AND AGREED:

_____
Angela Anne Flores p/k/a "Luna Aura",
individually, and on behalf of her publishing designee

SCHEDULE "A"

| *Composition: tentatively entitled "Walk Away"* | |
|---|---|
| **Writer / Publisher** | **Percentage** |
| Justin Blau | 70% |
| Angela Anne Flores | 30% |

<u>EXHIBIT "B"</u>

<u>Letter of Direction</u>

**3LAU Entertainment, LLC**
9101 Alta Drive Unit 407
Las Vegas, NV 89145

Dated as of November 1, 2017

_____
_____
_____

    **Re:**    "3LAU" -w-- "Luna Aura" / Side Artist Agreement / "Walk Away"

Gentlepersons:

Pursuant to an agreement between us and Luna Aura LLC ("Lender") f/s/o Angela Anne Flores p/k/a "Luna Aura" ("Side Artist") dated of even date herewith (the "Side Artist Agreement"), we have agreed that Lender shall be entitled to a fee in connection with the master recordings embodying the musical composition tentatively entitled "Walk Away" (the "Master") embodying the performances of Side Artist and the recording artist professionally known as "3LAU" ("Artist"), intended for inclusion on the upcoming recording project to be delivered by us to you under the recording agreement between you and us (the "Agreement").

    I hereby request and authorize you, solely as an accommodation to me, to pay Lender and credit Side Artist pursuant to the applicable terms and conditions of the Side Artist Agreement. The Advance (as such term is defined in the Side Artist Agreement) due to Lender should be remitted to the following address, or as otherwise provided by Lender:

Luna Aura LLC
4150 N 35th Pl
Phoenix, AZ 85018

    All royalties due to Lender should be remitted to the following address, or as otherwise provided by Lender:

StreetLightUSA
PO Box 6178
Peoria, AZ  85385

    Your compliance with this authorization will constitute an accommodation to us alone, and nothing herein shall vest in Lender or Side Artist rights as a beneficiary of or party to this instrument or any other agreement between you and us (or you and Artist). All payments hereunder will constitute payment to us, and you will have no liability by reason of any erroneous payment you may make or failure to comply with this authorization. We will indemnify and hold you harmless against any claims asserted against you and any damages, losses or expenses incurred by you by reason of any such payment or otherwise in connection herewith.

Very truly yours,

**3LAU Entertainment, LLC**

___*/s/ Justin Blau*_____
An authorized signatory