MOISH E. PELTZ, ESQ.
PAUL M. O'BRIEN, ESQ.
STEVEN C. BERLOWITZ, ESQ.
MATTHEW H. FEINBERG, ESQ.
FALCON RAPPAPORT & BERKMAN PLLC
265 Sunrise Highway, Suite 50
Rockville Centre, New York 11570
Telephone: (516) 599-0888
Facsimile: (516) 599-0889
Attorneys for PLAINTIFF LUNA AURA LLC f/s/o ANGELA ANNE FLORES p/k/a "LUNA AURA"

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
LUNA AURA LLC f/s/o ANGELA ANNE
FLORES p/k/a "LUNA AURA",

               Plaintiff,

    - against –

3LAU ENTERTAINMENT, LLC,
BLUME LLC and JUSTIN BLAU,

               Defendants.
---------------------------------------------------------X

**AMENDED COMPLAINT**

Plaintiff Luna Aura LLC f/s/o Angela Anne Flores p/k/a "Luna Aura", ("Luna Aura") by its attorneys Falcon Rappaport & Berkman PLLC, for its Amended Complaint, alleges:

**NATURE OF THE CASE**

1. Luna Aura is a singer, songwriter and music producer whose unique approach to transcending the typical constraints of genre has garnered worldwide interest from millions of listeners, concertgoers and many of music's biggest names.

2. In 2017, Luna Aura and defendant Justin Blau co-authored "Walk Away", a musical composition and recording featured in Blau's debut album *Ultraviolet*. Both the album,

1

and the song (which was marketed as a "single" in advance of the album's release), were met with commercial and critical success.

3. Although Blau holds himself out as a "rarity in the music industry" who is "[u]nwilling to take without giving back"[1], in February 2021, Blau re-released *Ultraviolet* and "Walk Away" as a series of non-fungible tokens ("NFTs"). The NFT auction (which was conducted without Luna Aura's knowledge, consent or participation) generated more than eleven million dollars ($11,000,000.00) in initial sales revenue.[2]

4. Despite this financial windfall, Defendants only offered Luna Aura a flat one-time payment of twenty-five thousand dollars ($25,000.00 USD) as compensation in connection with the sale of *Ultraviolet* and "Walk Away" NFTs.

5. Thus, Luna Aura brings this action to obtain redress for Defendants' breach of a November 1, 2017 agreement (the "Agreement") between Luna Aura and 3LAU Entertainment, LLC ("3LAU Entertainment") governing royalties due Luna Aura, an accounting of revenues collected as a result of the NFT project and for unjust enrichment.

**THE PARTIES**

6. Plaintiff, Luna Aura, is an Arizona limited liability company, domiciled in the State of Arizona, with its principal place of business located at 18803 E Arrowhead Trail, Queen Creek AZ 85142. Plaintiff Luna Aura's sole member is Angela Anne Flores, a natural person who is a citizen of the United States, and a resident and domiciliary of the state of California.

---

[1] See https://open.spotify.com/artist/4YLQaW1UU3mrVetC8gNkg5 (Accessed November 2, 2022).
[2] https://www.musicbusinessworldwide.com/as-3lau-makes-11-6m-from-nft-sales-his-management-company-eyes-more-auctions-for-more-artists/ (Accessed November 3, 2022).

7.     Upon information and belief, Defendant, 3LAU Entertainment, LLC ("3LAU Entertainment"), is a Nevada limited liability corporation, domiciled in the State of Nevada, with its principal place of business located at 410 S. Rampart Blvd. Ste. 250, Las Vegas, Nevada. Upon information and belief, Defendant, Justin Blau, is a natural person, a citizen of the United States, a resident and domiciliary of the state of Nevada, and is the sole member of 3LAU Entertainment.

8.     Upon information and belief, Defendant, Blume LLC ("Blume"), is a Nevada limited liability corporation, domiciled in the State of Nevada, with its principal place of business located at 9101 Alta Drive, Unit 4407, Las Vegas, Nevada. Upon information and belief, Defendant, Justin Blau, is natural person, a citizen of the United States, a resident and domiciliary of the state of Nevada, and is the sole member of Blume.

9.     Upon information and belief, Defendant, Justin Blau, professionally known as "3LAU", is a citizen of the United Staes, a resident and domiciliary of the State of Nevada, and is the sole member and principal officer of Defendant Blume, as well as Defendant 3LAU Entertainment.

10.     Upon information and belief, Defendant, Justin Blau, solely controls and manages the other herein named Defendant entities.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1132 because there is complete diversity of citizenship between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and cost.

12.     Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the acts and/or omissions giving rise to the

claims occurred within the district, including but not limited to the circumstances surrounding the subsequent NFT auction, all of which occurred without the consent and permission of Plaintiff.

13. Alternatively, venue is also proper within this district pursuant to 28 U.S.C. § 1391(b)(3) being that according to paragraph 8(c) of the Agreement between the parties, "[t]he validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York. Any claim, dispute, or disagreement with respect to this Agreement shall be submitted to the courts of the State of New York or the federal courts within the New York County, New York, which courts shall have exclusive jurisdiction thereof." A true and correct copy of the Agreement is annexed as Exhibit "A".

## THE FACTS

14. On or about November 1, 2017, Luna Aura and 3LAU Entertainment entered into the Agreement.

15. The Agreement set forth terms governing furnishing and the musical performance of a master recording of an untitled musical composition that later became known as "Walk Away." See Exhibit A.

16. The Agreement also stated the royalty compensation payable to Luna Aura by 3LAU Entertainment.

17. Paragraph 2 of the Agreement states the various rights granted to 3LAU Entertainment by Luna Aura. Specifically, 3LAU Entertainment was granted the sole and exclusive right to "[t]o manufacture, advertise, sell, license or otherwise dispose of the Master… and/or audio-visual recordings derived therefrom (whether embodying solely the Master or

Video or the Master or Video together with other audio or audio-visual recordings) upon such terms, and under such trademarks, as Productions (or its designee) elects, or, in its sole discretion."

18. Paragraph 3 of the Agreement stated that Luna Aura was entitled to "[a] basic royalty rate … with respect to sales of the Master … equal to fifty percent (50%) of the Net Royalty." The Net Royalty is defined as:

> the royalty payable to or credited to Productions or Artist by Distributor with respect to exploitations of the Master less the following: (1) the aggregate royalty rates payable to all producers, mixers, remixers, engineers and any other third party royalty participants for services rendered or otherwise in connection with the Master; (2) all permissible royalty deductions under the Recording Agreement, and (3) any and all bona fide and documented out-of-pocket costs incurred by Distributor, Productions, and/or Artist in connection with the manufacture, recording, promotion, distribution and exploitation of the Master, including, for the avoidance of doubt, mechanical royalties (all of which such costs shall first be deducted "off-the-top" from gross earnings).

19. Moreover, paragraph 5 of the Agreement, along with Schedule A, provided that Luna Aura co-authored and controlled 30% of the Composition of "Walk Away."

20. Pursuant to paragraph 5 of the Agreement, Luna Aura is entitled to:

> grant licenses … for the mechanical reproduction (including so-called "first use" licenses) of your respective share of the Composition in recordings embodying the performances of Artist of such Composition (including any and all versions and/or remixes thereof) at a rate equal to one hundred percent (100%) of the minimum fixed statutory mechanical rate in effect at the date of delivery of the master recordings embodying the applicable Composition (on a pro-rata basis)… and…grant and shall use reasonable efforts to cause your respective licensees, designees and assigns to grant any other licenses that Productions requests for the use or exploitation of your respective share of the Compositions, for which licenses you shall receive your share of income (in accordance with your respective share of the Compositions) derived from such license(s).

21. On December 1, 2017, prior to the release of *Ultraviolet*, "Walk Away" was released as a single.

22. On February 16, 2018, the artist, 3LAU and his record label, Blume, released an album entitled *Ultraviolet*. *Ultraviolet* featured the master recording of "Walk Away."

23. The album was met with commercially success and critical acclaim, due to the inclusion of the song "Walk Away" and its release as a "single" in the months leading up to the release of *Ultraviolet*.

24. Upon information and belief, royalties were accounted for and paid to Luna Aura in connection with "Walk Away" and the *Ultraviolet* album have not included amounts payable in connection with the sale of NFTs embodying the "Walk Away" composition or recording.

25. On or about February 26, 2021 (coinciding with the third anniversary of the release of the *Ultraviolet* album), Defendants released a collection of NFTs that were auctioned online to bidders. The NFTs were redeemable for special edition physical vinyl records of the *Ultraviolet* album (each of which included "Walk Away") and unreleased music and unique experiences.

26. The NFT release touted the success of the Ultraviolet album, stating "3LAU's Ultraviolet Vinyl Collection celebrates the three-year anniversary of his debut album released in 2018, garnering over 100 million streams to date." See, https://opensea.io/collection/ultraviolet-vinyl-collection-by-3lau.

27. The NFT sale also resulted in the creation of at least eight NFTs specific to the song "Walk Away" (https://opensea.io/collection/ultraviolet-vinyl-collection-by-3lau?search[query]=walk%20away), which allowed anyone to listen the song "Walk Away" by navigating to one of those NFTs (see, e.g., https://opensea.io/assets/ethereum/0x26b365dd6c6c2c5c1b19658ede5ef00c12402702/47).

28. Upon information and belief, and as was widely reported at the time and touted by Defendants' management company, Defendants' NFT auction resulted in approximately eleven million seven hundred thousand dollars ($11,700,000.00 USD) in initial sales of *Ultraviolet* NFTs.[3]

29. All *Ultraviolet* album sales necessarily include a reference to the song "Walk Away" (which is a single on the album) and, concomitantly, at least some of the auction proceeds are directly or attributable to sales of "Walk Away" NFTs.

30. 3LAU's management team touted the success of the NFT auction publicly, using it as a springboard for the sale of other NFTs in the music industry.

31. Upon information and belief, the sale of the *Ultraviolet* NFTs results in continued revenues for the resale of any particular NFT, including those NFTs which include the song "Walk Away."

32. Upon information and belief *Ultraviolet* NFTs and specifically "Walk Away" NFTs are still being publicly performed and traded on the Ethereum Blockchain and generating revenues for Defendants, and may generate additional revenues in the future.

33. The *Ultraviolet* NFT auction resulted in not only significant proceeds received by Defendants, but established Blau as a NFT "thought leader" and led to significant commercial opportunities for his related ventures (as well as those of his management company), all of which Luna Aura was deprived of participation in. See, e.g.,

https://www.forbes.com/sites/abrambrown/2021/03/03/3lau-nft-nonfungible-tokens-justin-blau/

---

[3] https://www.musicbusinessworldwide.com/taren-smith-promoted-to-senior-manager-at-ymu-us-music/ (Accessed November 3, 2022).

and https://techcrunch.com/2021/11/22/nft-music-rights-startup-royal-banks-55m-investment-from-a16z-crypto/.

34. Notwithstanding what was mandated by the Agreement and governing law, Luna Aura has not received any compensation from revenues generated from the NFT project, nor has Luna Aura appropriate credit in connection with the "Walk Away" and *Ultraviolet* NFTs.

35. Despite the commercial and financial success of the NFT auction, Defendants (via BLUME LLC and a document prepared by Defendants' business manager) only offered Luna Aura an after-the-fact, one-time payment of twenty-five thousand dollars ($25,000.00 USD) in exchange for a license to utilize the "Walk Away" composition and master recording in connection with the NFTs.

36. No Agreement was entered, yet, Defendants continued to market and sell "Walk Away" and *Ultraviolet* NFTs without compensating Luna Aura.

## FIRST CAUSE OF ACTION
### Breach of Contract

**(Against Defendant 3LAU Entertainment, LLC)**

37. Luna Aura repeats and realleges Paragraphs 1 through 36 as if fully set forth herein.

38. Luna Aura and 3LAU Entertainment entered into the Agreement for the furnishing and musical performance of a master recording of a musical composition that later became known as "Walk Away."

39. Luna Aura performed her obligations under the Agreement by furnishing and performing a master recording of the song "Walk Away."

40. 3LAU Entertainment failed to fulfill its obligations and breached the terms of the Agreement by participating in and/or releasing NFTs in connection with the NFT auction, selling

*Ultraviolet* and "Walk Away" NFTs, and allowing NFTs to be redeemable for vinyl records containing the song "Walk Away."

41. 3LAU Entertainment did not seek Luna Aura's permission or a license from Luna Aura to include her work in the auction, nor was Luna Aura adequately compensated for her work.

42. Moreover, 3LAU Entertainment failed to account for or provide Luna Aura with any compensation, royalties or other payments in connection with the sale of the NFTs.

43. As such, Luna Aura has been damaged by an amount exceeding $75,000, exclusive of interest, which will be further determined at trial.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

**(Against All Defendants)**

44. Luna Aura repeats and realleges Paragraphs 1 through 43 as if fully set forth herein.

45. All Defendants have been unjustly enriched at Luna Aura's expense.

46. Upon information and belief, Defendants' sale of the NFTs at the February 2021, auction amounted to initial sales revenue of approximately eleven million seven hundred thousand dollars ($11,700,000.00 USD) and ongoing resale royalties.

47. Luna Aura's contribution to the album upon which the NFT project was based, and to "Walk Away", upon which certain NFTs auctioned were based, is significant, calculable and must be accounted for.

48. It is against equity and good conscience for Defendants to retain the profits due and owing to Luna Aura from the unauthorized NFT auction and continued resales.

## THIRD CAUSE OF ACTION

## For An Accounting

### (Against Defendant 3LAU Entertainment, LLC)

49. Luna Aura repeats and realleges Paragraphs 1 through 48 as if fully set forth herein.

50. As is evident by the Agreement, there is a contractual relationship between Luna Aura and 3LAU Entertainment.

51. In violation of the Agreement, 3LAU Entertainment acted outside the scope of the parties' Agreement by conducting the NFT auction.

52. Upon information and belief, the NFT auction resulted in at least $11.7 million in sales, and continued revenues from any resale of the NFTs.

53. The Agreement mandates that Luna Aura is entitled to royalties from the sale and publishing of "Walk Away."

54. Upon information and belief, all Defendants have failed to account to Luna Aura for proceeds from the sale of NFTs and any related proceeds.

55. The amount due to Luna Aura is unknown at this time and cannot be ascertained without an accounting.

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

(a) on the Count I, damages against Defendants in an amount to be determined at trial;

(b) on the Count II, damages against Defendants in an amount to be determined at trial;

(c) on the Count III, for an accounting to ascertain the full extent of Laura Aura's damages;

(d) all pre-judgment interest, costs, disbursements and attorneys' fees incurred in connection with this action; and

(e) such other and further relief under law or equity as the Court may deem just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CAUSES OF ACTION**

Dated:  November 23, 2022

        Respectfully submitted,

        **FALCON RAPPAPORT & BERKMAN PLLC**

        By: /s/ Paul M. O'Brien

        Moish E. Peltz, Esq.
        Paul M. O'Brien, Esq.
        Steven C. Berlowitz, Esq.
        Matthew H. Feinberg, Esq.
        265 Sunrise Highway, Suite 50
        Rockville Centre, NY 11570
        Telephone: (516) 599-0888
        mpeltz@frblaw.com
        pobrien@frblaw.com
        sberlowitz@frblaw.com

        *Attorneys for Plaintiff*