Laura Ganoza
Andrew L. Lee
Ashley M. Koley (*pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
Tel: 212.682.7474
Fax: 212.687.2329

*Attorneys for Defendants*
3LAU ENTERTAINMENT, LLC,
BLUME LLC and JUSTIN BLAU

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUNA AURA LLC f/s/o ANGELA ANNE FLORES p/k/a "LUNA AURA", | |
| Plaintiff, | |
| v. | Case No. 1:22-cv-09598-JHR |
| 3LAU ENTERTAINMENT, LLC, BLUME LLC and JUSTIN BLAU, | |
| Defendants. | |
| _____/ | |

### DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
### PLAINTIFF'S AMENDED COMPLAINT

Defendants' 3LAU Entertainment, LLC, Blume LLC and Justin Blau (collectively "Defendants") by their undersigned attorneys Foley & Lardner LLP, hereby answers Plaintiffs' First Amended Complaint as follows:

## NATURE OF THE CASE

1.     Luna Aura is a singer, songwriter and music producer whose unique approach to transcending the typical constraints of genre has garnered worldwide interest from millions of listeners, concertgoers and many of music's biggest names.

**<u>ANSWER:</u>**

Defendants are without sufficient knowledge or information to admit or deny the allegations contained in paragraph 1 and therefore deny same.

2.     In 2017, Luna Aura and defendant Justin Blau co-authored "Walk Away", a musical composition and recording featured in Blau's debut album *Ultraviolet*.  Both the album, and the song (which was marketed as a "single" in advance of the album's release), were met with commercial and critical success.

**<u>ANSWER:</u>**

Admitted that Luna Aura contributed 30% to the musical composition and Blau contributed 70% of the musical composition for the song entitled "Walk Away," which was included in Blau's debut album *Ultraviolet*.  Defendants further admit that the *Ultraviolet* album was a commercial and critical success, and that "Walk Away" was just one of several songs marketed as a single in advance of the album's release.  The remaining allegations in paragraph 2 are denied.

4873-7756-6284.2

3.     Although Blau holds himself out as a "rarity in the music industry" who is "[u]nwilling to take without giving back"[1], in February 2021, Blau re-released *Ultraviolet* and "Walk Away" as a series of non-fungible tokens ("NFTs").  The NFT auction (which was conducted without Luna Aura's knowledge, consent or participation) generated more than eleven million dollars ($11,000,000.00) in initial sales revenue.[2]

**ANSWER:**

The quotes referenced in paragraph 3 speak for themselves.  Defendants admit that Blau is a "rarity in the music industry" and further admit that Blau has a philosophy of giving as evidenced by, among other things, Defendant Blume's donations totaling more than $400,000 to charities across the globe.  Defendants admit that they conducted a 2-day auction from February 26 through 28, 2021, consisting of thirty-three (33) NFTs wherein each NFT was redeemable for a collection of physical and digital rewards and experiences.  Defendants further admit that this NFT auction generated more than eleven million dollars ($11,000,000.00) in initial sales revenue.  The remaining allegations in paragraph 3 are denied.

---

[1] See https://open.spotify.com/artist/4YLQaW1UU3mrVetC8gNkg5 (Accessed November 2, 2022).

[2] https://www.musicbusinessworldwide.com/as-3lau-makes-11-6m-from-nft-sales-his-management-company-eyes-more-auctions-for-more-artists/ (Accessed November 3, 2022).

4.      Despite this financial windfall, Defendants only offered Luna Aura a flat one-time payment of twenty-five thousand dollars ($25,000.00 USD) as compensation in connection with the sale of *Ultraviolet* and "Walk Away" NFTs.

**ANSWER:**

Denied.

5.      Thus, Luna Aura brings this action to obtain redress for Defendants' breach of a November 1, 2017 agreement (the "Agreement") between Luna Aura and 3LAU Entertainment, LLC ("3LAU Entertainment") governing royalties due Luna Aura, an accounting of revenues collected as a result of the NFT project and for unjust enrichment.

**ANSWER:**

Defendants admit that Luna Aura purports to bring these claims, but Defendants deny any breach of the Agreement and further deny the remaining allegations in paragraph 5.

**THE PARTIES**

6.      Plaintiff, Luna Aura, is an Arizona limited liability company, domiciled in the State of Arizona, with its principal place of business located at 18803 E Arrowhead Trail, Queen Creek AZ 85142.  Plaintiff Luna Aura's sole member is Angela Anne Flores, a natural person who is a citizen of the United States, and a resident and domiciliary of the state of California.

**ANSWER:**

Defendants are without sufficient knowledge or information to admit or deny the allegations contained in paragraph 6 and therefore deny same.

4873-7756-6284.2

7.      Upon information and belief, Defendant, 3LAU Entertainment, LLC ("3LAU Entertainment"), is a Nevada limited liability corporation, domiciled in the State of Nevada, with its principal place of business located at 410 S. Rampart Blvd. Ste. 250, Las Vegas, Nevada.  Upon information and belief, Defendant, Justin Blau, is a natural person, a citizen of the United States, a resident and domiciliary of the state of Nevada, and is the sole member of 3LAU Entertainment.

**<u>ANSWER:</u>**

Denied that 3LAU Entertainment's principal place of business is located at 410 S. Rampart Blvd. Ste. 250, Las Vegas, Nevada.  The remaining allegations are admitted.


8.      Upon information and belief, Defendant, Blume LLC ("Blume"), is a Nevada limited liability corporation, domiciled in the State of Nevada, with its principal place of business located at 9101 Alta Drive, Unit 4407, Las Vegas, Nevada.  Upon information and belief, Defendant, Justin Blau, is natural person, a citizen of the United States, a resident and domiciliary of the state of Nevada, and is the sole member of Blume.

**<u>ANSWER:</u>**

Denied that Blume's principal place of business is located at 9101 Alta Drive, Unit 4407, Las Vegas, Nevada.  The remaining allegations are admitted.


9.      Upon information and belief, Defendant, Justin Blau, professionally known as "3LAU", is a citizen of the United States, a resident and domiciliary of the State of Nevada, and is the sole member and principal officer of Defendant Blume, as well as Defendant 3LAU Entertainment.

4873-7756-6284.2

**ANSWER:**

    Admitted.

    10.    Upon information and belief, Defendant, Justin Blau, solely controls and manages the other herein named Defendant entities.

**ANSWER:**

    Admitted.

## JURISDICTION AND VENUE

    11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1132 [sic] because there is complete diversity of citizenship between Plaintiff and each Defendant and the amount in controversy exceeds $75,000, exclusive of interest and cost.

**ANSWER:**

    Admitted for jurisdictional purposes only pursuant to 28 U.S.C. § 1332, but denied that Plaintiffs are entitled to relief exceeding $75,000, exclusive of interest and cost, or any relief at all.

    12.    Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because, upon information and belief, a substantial part of the acts and/or omissions giving rise to the claims occurred within the district, including but not limited to the circumstances surrounding the subsequent NFT auction, all of which occurred without the consent and permission of Plaintiff.

**ANSWER:**

    Admitted that venue is proper pursuant to the terms of the Agreement.  The remaining allegations are denied.

4873-7756-6284.2

13.     Alternatively, venue is also proper within this district pursuant to 28 U.S.C. § 1391(b)(3) being that according to paragraph 8(c) of the Agreement between the parties, "[t]he validity, interpretation and legal effect of this Agreement shall be governed by the laws of the State of New York applicable to contracts entered into and performed entirely within the State of New York.  Any claim, dispute, or disagreement with respect to this Agreement shall be submitted to the courts of the State of New York or the federal courts within the New York County, New York, which courts shall have exclusive jurisdiction thereof."  A true and correct copy of the Agreement is annexed as Exhibit "A".

**ANSWER:**

Admitted that the Agreement provides for venue in this district.  Denied that a true and correct copy of the Agreement was annexed to the First Amended Complaint as Exhibit A.

## THE FACTS

14.     On or about November 1, 2017, Luna Aura and 3LAU Entertainment entered into the Agreement.

**ANSWER:**

Admitted.

15.     The Agreement set forth terms governing furnishing and the musical performance of a master recording of an untitled musical composition that later became known as "Walk Away."  See Exhibit A.**ANSWER:**

7

Admitted that the Agreement sets forth certain terms regarding the song "Walk Away," but the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph 15 inconsistent therewith.

16.     The Agreement also stated the royalty compensation payable to Luna Aura by 3LAU Entertainment.

**ANSWER:**

Admitted that the Agreement sets forth terms certain terms regarding royalties, but the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph 16 inconsistent therewith.

17.     Paragraph 2 of the Agreement states the various rights granted to 3LAU Entertainment by Luna Aura.  Specifically, 3LAU Entertainment was granted the sole and exclusive right to "[t]o manufacture, advertise, sell, license or otherwise dispose of the Master … and/or audio-visual recordings derived therefrom (whether embodying solely the Master or Video or the Master or Video together with other audio or audio-visual recordings) upon such terms, and under such trademarks, as Productions (or its designee) elects, or, in its sole discretion."

8

**ANSWER:**

Admitted that the Agreement sets forth terms certain rights granted 3LAU Entertainment, but the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph 17 inconsistent therewith.

18.     Paragraph 3 of the Agreement stated that Luna Aura was entitled to "[a] basic royalty rate … with respect to sales of the Master … equal to fifty percent (50%) of the Net Royalty."  The Net Royalty is defined as:

> the royalty payable to or credited to Productions or Artist by Distributor with respect to exploitations of the Master less the following:  (1) the aggregate royalty rates payable to all producers, mixers, remixers, engineers and any other third party royalty participants for services rendered or otherwise in connection with the Master; (2) all permissible royalty deductions under the Recording Agreement, and (3) any and all bona fide and documented out-of-pocket costs incurred by Distributor, Productions, and/or Artist in connection with the manufacture, recording, promotion, distribution and exploitation of the Master, including, for the avoidance of doubt, mechanical royalties (all of which such costs shall first be deducted "off-the-top" from gross earnings).

**ANSWER:**

Admitted that the Agreement sets forth terms regarding royalties, but the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph 18 inconsistent therewith.

19.     Moreover, paragraph 5 of the Agreement, along with Schedule A, provided that Luna Aura co-authored and controlled 30% of the Composition of "Walk Away."

**ANSWER:**

Admitted that the Agreement, along with Schedule A, set forth Luna Aura's contribution to the musical composition of "Walk Away," but the terms of the Agreement and Schedule A speak for themselves and Defendants deny any allegation in paragraph 19 inconsistent therewith.

9

20. Pursuant to paragraph 5 of the Agreement, Luna Aura is entitled to:

grant licenses … for the mechanical reproduction (including so-called "first use" licenses) of your respective share of the Composition in recordings embodying the performances of Artist of such Composition (including any and all versions and/or remixes thereof) at a rate equal to one hundred percent (100%) of the minimum fixed statutory mechanical rate in effect at the date of delivery of the master recordings embodying the applicable Composition (on a pro-rata basis)… and…grant and shall use reasonable efforts to cause your respective licensees, designees and assigns to grant any other licenses that Productions requests for the use or exploitation of your respective share of the Compositions, for which licenses you shall receive your share of income (in accordance with your respective share of the Compositions) derived from such license(s).

**ANSWER:**

Admitted that the Agreement sets forth terms regarding Luna Aura's representations and obligations, but the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph 20 inconsistent therewith.

21. On December 1, 2017, prior to the release of *Ultraviolet*, "Walk Away" was released as a single.

**ANSWER:**

Defendants admit that "Walk Away" was just one of several songs marketed as a single in advance of the album's release.

22. On February 16, 2018, the artist, 3LAU and his record label, Blume, released an album entitled *Ultraviolet*. *Ultraviolet* featured the master recording of "Walk Away."

**ANSWER:**

10

Admitted that the Ultraviolet album was released in February 16, 2018 and that it included the master recording of "Walk Away."  The remaining allegations of paragraph 22 are denied.

23.     The album was met with commercially [sic] success and critical acclaim, due to the inclusion of the song "Walk Away" and its release as a "single" in the months leading up to the release of *Ultraviolet*.

**ANSWER:**

Defendants admit that the *Ultraviolet* album was a commercial and critical success, and that "Walk Away" was just one of several songs marketed as a single in advance of the album's release.   The remaining allegations in paragraph 23 are denied.

24.     Upon information and belief, royalties were accounted for and paid to Luna Aura in connection with "Walk Away" and the *Ultraviolet* album have not included amounts payable in connection with the sale of NFTs embodying the "Walk Away" composition or recording.

**ANSWER:**

Admitted that royalties were accounted for and paid to Luna Aura in connection with "Walk Away" and the *Ultraviolet* album and further admitted that Defendants accounted for and agreed to pay Plaintiffs a meaningful amount based on a proper apportionment of their share of the value contributed by "Walk Away" to the NFTs, but Plaintiffs refused to accept payment. The remaining allegations in paragraph 24 are denied.

25.     On or about February 26, 2021 (coinciding with the third anniversary of the release of the *Ultraviolet* album), Defendants released a collection of NFTs that were auctioned online to

11

bidders.  The NFTs were redeemable for special edition physical vinyl records of the *Ultraviolet* album (each of which included "Walk Away") and unreleased music and unique experiences.

**ANSWER:**

The first sentence of paragraph 25 is admitted.  Admitted that the NFTs were redeemable for special edition physical vinyl records of the *Ultraviolet* album, unreleased music and unique experiences, among other awards.  The remaining allegations in paragraph 25 are denied.

26.     The NFT release touted the success of the Ultraviolet album, stating "3LAU's Ultraviolet Vinyl Collection celebrates the three-year anniversary of his debut album released in 2018, garnering over 100 million streams to date."  See, https://opensea.io/collection/ultraviolet-vinyl-collection-by-3lau.

**ANSWER:**

The press release speaks for itself and Defendants deny any allegation in paragraph 26 inconsistent therewith.

27.     The NFT sale also resulted in the creation of at least eight NFTs specific to the song "Walk            Away"            (https://opensea.io/collection/ultraviolet-vinyl-collection-by-3lau?search[query]=walk%20away), which allowed anyone to listen the song "Walk Away" by navigating        to        one        of        those        NFTs        (see,        e.g., https://opensea.io/assets/ethereum/0x26b365dd6c6c2c5c1b19658ede5ef00c12402702/47).

**ANSWER:**

Denied.

28.     Upon information and belief, and as was widely reported at the time and touted by Defendants' management company, Defendants' NFT auction resulted in approximately eleven million seven hundred thousand dollars ($11,700,000.00 USD) in initial sales of *Ultraviolet* NFTs.[3]

**ANSWER:**

Admitted.

29.     All *Ultraviolet* album sales necessarily include a reference to the song "Walk Away" (which is a single on the album) and, concomitantly, at least some of the auction proceeds are directly or attributable to sales of "Walk Away" NFTs.

**ANSWER:**

Denied.

30.     3LAU's management team touted the success of the NFT auction publicly, using it as a springboard for the sale of other NFTs in the music industry.

**ANSWER:**

Admitted that the NFT auction of February 26-28, 2021 was a success.  The rest of the allegations in paragraph 30 are denied.

---

[3] https://www.musicbusinessworldwide.com/taren-smith-promoted-to-senior-manager-at-ymu-us-music/ (Accessed November 3, 2022).

31.     Upon information and belief, the sale of the *Ultraviolet* NFTs results in continued revenues for the resale of any particular NFT, including those NFTs which include the song "Walk Away."

**ANSWER:**

Denied that Defendants receive revenues for any resales.


32.     Upon information and belief *Ultraviolet* NFTs and specifically "Walk Away" NFTs are still being publicly performed and traded on the Ethereum Blockchain and generating revenues for Defendants, and may generate additional revenues in the future.

**ANSWER:**

Denied.


33.     The *Ultraviolet* NFT auction resulted in not only significant proceeds received by Defendants, but established Blau as a NFT "thought leader" and led to significant commercial opportunities for his related ventures (as well as those of his management company), all of which Luna     Aura     was     deprived     of     participation     in.     See,     e.g., https://www.forbes.com/sites/abrambrown/2021/03/03/3lau-nft-nonfungible-tokens-justin-blau/ and     https://techcrunch.com/2021/11/22/nft-music-rights-startup-royal-banks-55m-investment-from-a16z-crypto/.

**ANSWER:**

4873-7756-6284.2

Denied.  Blau was a "thought leader" in the crypto/NFT community before this auction.

34.     Notwithstanding what was mandated by the Agreement and governing law, Luna
Aura has not received any compensation from revenues generated from the NFT project, nor has
Luna Aura appropriate credit in connection with the "Walk Away" and *Ultraviolet* NFTs.

**ANSWER:**

Denied.

35.     Despite the commercial and financial success of the NFT auction, Defendants (via
BLUME LLC and a document prepared by Defendants' business manager) only offered Luna Aura
an after-the-fact, one-time payment of twenty-five thousand dollars ($25,000.00 USD) in exchange
for a license to utilize the "Walk Away" composition and master recording in connection with the
NFTs.

**ANSWER:**

Denied.

36.     No Agreement was entered, yet, Defendants continued to market and sell "Walk
Away" and *Ultraviolet* NFTs without compensating Luna Aura.

**ANSWER:**

Admitted that Defendants agreed to pay Plaintiffs a meaningful amount based on a proper
apportionment of their share of the value contributed by "Walk Away" to the NFTs, but Plaintiffs
refused to accept payment. The remaining allegations in paragraph 36 are denied.

4873-7756-6284.2

## FIRST CAUSE OF ACTION
**Breach of Contract**

**(Against Defendant 3LAU Entertainment, LLC)**

37.     Luna Aura repeats and realleges Paragraphs 1 through 36 as if fully set forth herein.

**ANSWER:**

Defendants repeat and reallege their answers to Paragraphs 1 through 36 as if fully set forth

herein.

38.     Luna Aura and 3LAU Entertainment entered into the Agreement for the furnishing

and musical performance of a master recording of a musical composition that later became known

as "Walk Away."

**ANSWER:**

Admitted that the Agreement sets forth certain terms regarding the song "Walk Away," but

the terms of the Agreement speak for themselves and Defendants deny any allegation in paragraph

38 inconsistent therewith.

39.     Luna Aura performed her obligations under the Agreement by furnishing and

performing a master recording of the song "Walk Away."

**ANSWER:**

Admitted that Luna Aura performed certain obligations under the Agreement.

40.     3LAU Entertainment failed to fulfill its obligations and breached the terms of the Agreement by participating in and/or releasing NFTs in connection with the NFT auction, selling *Ultraviolet* and "Walk Away" NFTs, and allowing NFTs to be redeemable for vinyl records containing the song "Walk Away."

**ANSWER:**

Denied.

41.     3LAU Entertainment did not seek Luna Aura's permission or a license from Luna Aura to include her work in the auction, nor was Luna Aura adequately compensated for her work.

**ANSWER:**

Denied that either permission or license is required under the Agreement.  Defendants further state that they agreed to pay Plaintiffs a meaningful amount based on a proper apportionment of their share of the value contributed by "Walk Away" to the NFTs, but Plaintiffs refused to accept payment. The remaining allegations in paragraph 41 are denied.

42.     Moreover, 3LAU Entertainment failed to account for or provide Luna Aura with any compensation, royalties or other payments in connection with the sale of the NFTs.

**ANSWER:**

Denied.

43.     As such, Luna Aura has been damaged by an amount exceeding $75,000, exclusive of interest, which will be further determined at trial.

**ANSWER:**

Denied.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

### (Against All Defendants)

44.     Luna Aura repeats and realleges Paragraphs 1 through 43 as if fully set forth herein.

**ANSWER:**

Defendants repeat and reallege Paragraphs 1 through 43 as if fully set forth herein

45.     All Defendants have been unjustly enriched at Luna Aura's expense.

**ANSWER:**

Denied.

46.     Upon information and belief, Defendants' sale of the NFTs at the February 2021, auction amounted to initial sales revenue of approximately eleven million seven hundred thousand dollars ($11,700,000.00 USD) and ongoing resale royalties.

**ANSWER:**

Admitted that the initial sales revenue was approximately eleven million seven hundred thousand dollars ($11,700,000.00 USD), but denied that Defendants are receiving ongoing resale royalties.

18

47.    Luna Aura's contribution to the album upon which the NFT project was based, and to "Walk Away", upon which certain NFTs auctioned were based, is significant, calculable and must be accounted for.

**ANSWER:**

Denied.

48.    It is against equity and good conscience for Defendants to retain the profits due and owing to Luna Aura from the unauthorized NFT auction and continued resales.

**ANSWER:**

Denied.

**THIRD CAUSE OF ACTION**
**For An Accounting**

**(Against Defendant 3LAU Entertainment, LLC)**

49.    Luna Aura repeats and realleges Paragraphs 1 through 48 as if fully set forth herein.

**ANSWER:**

Defendants repeat and reallege Paragraphs 1 through 48 as if fully set forth herein

50.    As is evident by the Agreement, there is a contractual relationship between Luna Aura and 3LAU Entertainment.

**ANSWER:**

4873-7756-6284.2

Admitted.

51.     In violation of the Agreement, 3LAU Entertainment acted outside the scope of the parties' Agreement by conducting the NFT auction.

**ANSWER:**

Denied.

52.     Upon information and belief, the NFT auction resulted in at least $11.7 million in sales, and continued revenues from any resale of the NFTs.

**ANSWER:**

Denied.

53.     The Agreement mandates that Luna Aura is entitled to royalties from the sale and publishing of "Walk Away."

**ANSWER:**

Denied.

54.     Upon information and belief, all Defendants have failed to account to Luna Aura for proceeds from the sale of NFTs and any related proceeds.

**ANSWER:**

Denied.

55.     The amount due to Luna Aura is unknown at this time and cannot be ascertained without an accounting.

**ANSWER:**

Denied.

56.     Defendants deny each allegation not specifically admitted and demand strict proof thereof.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

Plaintiffs fail to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiffs' claims are barred by unclean hands due to Plaintiffs' own actions or inactions including, *inter alia*, Plaintiffs' refusal to accept a meaningful amount of compensation based on a proper apportionment of their contribution to the NFT value.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to any relief because they have sustained no injury or damages.

**FOURTH AFFIRMATIVE DEFENSE**

To the extent there are any damages, Plaintiffs' claims are barred to the extent Plaintiffs failed to take reasonable measures to mitigate, minimize, or otherwise avoid any alleged losses or damages.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Agreement states that all royalties are to be paid to "StreetLightUSA" or another IRS Tax Exempt 510(c)(3) Non-Profit of Plaintiffs' choosing, not to Plaintiffs.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred due to Plaintiffs' breach of the duty of good faith and fair dealing.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs are not entitled to the relief requested in this First Amended Complaint by virtue of the doctrines of estoppel, waiver, acquiescence and/or additional equitable doctrines.

## EIGHTH AFFIRMATIVE DEFENSE

Plaintiffs' unjust enrichment claim fails to the extent Plaintiffs claim that the Agreement governs the parties' conduct.

## NINTH AFFIRMATIVE DEFENSE

Defendants hereby give notice that they intend to rely on such other and further defenses as may become available or apparent during discovery proceedings in this case and hereby reserve the right to amend this Answer and to assert any such defenses

**WHEREFORE,** in consideration of the foregoing, Defendants respectfully request that this Court dismiss the First Amended Complaint, enter Judgment in Defendants' favor and against Plaintiffs, award Defendants their costs and expenses, including reasonable attorney fees, in connection with defending this lawsuit and grant such relief as this Court deems just and proper.

Dated: January 27, 2023

By: */s/ Laura Ganoza*

Laura Ganoza
Andrew L. Lee
Ashley M. Koley (*pro hac vice*)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY 10016-1314
Tel: 212.682.7474
Fax: 212.687.2329

*Attorneys for Defendants*
3LAU ENTERTAINMENT, LLC,
BLUME LLC and JUSTIN BLAU

## CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2023, a copy of Defendants' Answer and Affirmative

Defenses were filed with the Clerk of the Court and served upon counsel of record via electronic

mail.

Moish E. Peltz, Esq.
E-mail: mpeltz@frblaw.com
Paul M. O'Brien, Esq.
E-mail: pobrien@frblaw.com
Steven C. Berlowitz, Esq.
E-mail: sberlowitz@frblaw.com
Matthew H. Feinberg, Esq.
E-mail: mfeinberg@frblaw.com
FALCON RAPPAPORT & BERKMAN PLLC
265 Sunrise Highway
Suite 50
Rockville Centre, New York 11570
Telephone: (516) 599-0888
Facsimile: (516) 599-0889

*Attorneys for Plaintiff Luna Aura LLC f/s/o*
*Angela Anne Flores p/k/a "Luna Aura"*

*/s/ Laura Ganoza*
Laura Ganoza